THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH BROWN, Defendant-Appellant.

First District (2nd Division)   No. 1—90—3520

Opinion filed October 12, 1993.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Margaret J. Faustmann, and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Defendant Keith Brown was charged with possession with intent to deliver more than 15 but less than 100 grams of cocaine. After a first trial resulted in a hung jury, he was convicted by a second jury of possession of a controlled substance, a lesser included offense. Thereafter, the circuit court sentenced him to seven years in the custody of the Department of Corrections. On appeal, defendant contends that his fourth and fourteenth amendment rights were violated, that prior crime evidence was improperly admitted at his trial, that his sixth and fourteenth amendment rights to confrontation and effective assistance of counsel were violated, and that the mittimus erroneously shows a conviction of an offense for which he was acquitted.

For purposes of our review, we combine the evidence elicited at the hearing on the pretrial motion to suppress evidence and the trial.

Chicago police officer Manuel Godinez testified that he and his partner, Officer Jay Sanchez, were traveling west on Roosevelt Road near Racine at approximately 9:05 p.m. on November 23, 1988. He observed a gold four-door Chevrolet automobile with a broken rear vent window on the passenger side. Although the car, which had three occupants, committed no traffic violation, the officers stopped it in order to determine whether it had been stolen. As part of his training, Godinez had been taught that a broken vent window was possible evidence of a stolen automobile. According to Godinez, the officers made no effort to find out if it was listed as stolen.

After the vehicle stopped, the three occupants, including defendant, got out. Godinez observed a .38-caliber handgun in the possession of one of the occupants, Kenneth Dean. Dean gave the weapon to another of the occupants, not defendant, and began to run away. Godinez ran after him, caught him, and returned with him to the car. By that time, defendant was in custody. Sanchez showed Godinez a bag containing white powder suspected to be cocaine and explained that he had recovered the bag from defendant's hand after defendant reached into his jacket pocket while getting out of the car.

Godinez admitted that he had testified at the preliminary hearing on December 22, 1988, that he, not Sanchez, had recovered the drugs from defendant. He had not in fact done so and was incorrect when he so testified at the preliminary hearing. In all subsequent reports, he wrote that Sanchez had recovered the cocaine. Defense counsel cross-examined him vigorously on this point, as well as on other prior inconsistent statements.

Sanchez testified that he and Godinez had stopped the vehicle with a broken right rear window because they believed it to be stolen. Before stopping the car, Sanchez called his dispatcher to find out if the car had been reported stolen, but had not received the information at the time of the stop. Sanchez saw Dean exit the car and hand a gun to the driver, who placed it on the floor in front of the back seat where defendant was seated. Dean ran away and Godinez pursued him. As Sanchez approached the car, he told defendant and the driver to get out. While he was getting out of the car, defendant reached into his pocket. Sanchez, having already seen one weapon in the car and believing that defendant had another in his pocket, grabbed defendant's hand and removed it from his pocket. Defendant had in his hand a plastic bag containing several smaller plastic bags with white powder, which Sanchez believed to be cocaine.

On cross-examination, defense counsel attempted repeatedly to question Sanchez regarding the weight of the powder. The State objected, and the court sustained the objections. In a sidebar, defendant argued that the State had to prove the weight to be more than 15 grams beyond a reasonable doubt, and that Sanchez's report said only eight grams were recovered. The State argued that Sanchez could not testify as to the actual weight; his testimony should be limited to the fact that he estimated the weight in his report. The court ruled that defense counsel could try to establish a different weight, but not through Sanchez.

Detective Walter Boddie testified that on April 26, 1988, at approximately 10:30 p.m. in the vicinity of 1233 West Washburne in Chi-

cago, he had purchased from defendant two "dime bags" of white powder believed to be cocaine with $15 of prerecorded funds. He had observed three or four men approach the door of the house at that address prior to his own approach, and when he came to the door he saw defendant inside the house behind a set of folding burglar gates. He told defendant he wanted "two for fifteen," which meant he wanted two dime bags of cocaine for $15. He gave defendant $15 in prerecorded funds, defendant gave the money to another man in the apartment, the other man placed two objects in defendant's hand, and defendant gave the two objects to Boddie. The objects were two tinfoil packets containing white powder. Defendant objected to further testimony from Boddie. The court sustained the objection, and instructed the jury that Boddie was testifying for a limited purpose and that the jury was to consider Boddie's testimony only insofar as it was relevant to the issue of intent.

The parties then stipulated to the testimony of Chicago police chemist Arthur Kruski. He weighed the two packets received by Boddie from defendant, the total weight of both was .20 grams, and tests revealed that the substance contained in each packet was cocaine.

The parties also stipulated that the chain of custody of the seized bag containing 180 smaller bags, each containing a white powder believed to be cocaine, was proper and correct at all times from when it was seized by Sanchez until it was tested by the Chicago police crime lab.

Finally, the parties stipulated to the testimony of Chicago police chemist Gwendolyn Bristor. She separately weighed the white powder contained in 154 of the 180 plastic bags, having removed the powder from each of the bags and having used a properly functioning and calibrated weighing device with which she was familiar. The total weight of the white powder found in those bags was 18 grams. She performed certain tests and examinations on the white powder and determined that, in her opinion, the white powder was a substance containing cocaine, with a total confirmed weight of 16.01 grams.

The large bag, the smaller bags, the gun, the bullets, a diagram used in Sanchez's and Godinez's testimony, and the stipulations were entered into evidence without objection.

Tracey Brown testified for the defense that he had known defendant for about nine years, and he was present when the raid was conducted by Boddie at 1213 Washburne on April 26, 1988. Although he pleaded guilty to delivery of a controlled substance, he had merely been in the house drinking beer. Defendant did not give him $15, he

did not give defendant two tinfoil packages, and he did not see defendant give two tinfoil packages to Boddie.

John Brewster testified that he had known defendant for about 10 years. On April 26, 1988, he had been with defendant when they went to visit a woman named Sheila at 1233 Washburne at about 10 p.m. The three of them were sitting in the kitchen when the police broke into the house. Tracey Brown had gone to answer the door twice. Defendant never went to answer the door, and he never sold cocaine to Boddie.

Kenneth Dean testified that it was Sanchez and not Godinez who chased him. He denied possessing a weapon when he got out of the car and ran, but admitted pleading guilty to a weapon violation. He saw defendant outside the car when he returned, but did not see either policeman recover a plastic bag containing white powder. The car was owned by the third occupant and had a broken opera window which had been taped over.

Defendant testified that on November 23, 1988, he had been shopping during the evening. He walked to the bus stop, and while waiting for a bus, he saw a gold 1987 Chevrolet drive by with his acquaintance Frank Shaw in the passenger seat. Defendant also called the passenger "Kenney." The car stopped, the passenger having recognized defendant, and defendant asked him if he was going defendant's way. Defendant got in the back seat of the car. One of the rear windows of the car was broken.

When the officers flashed their lights, defendant told the driver to pull over. She did so at the first opportunity, which was after two or three blocks. After they stopped, Frank Shaw got out of the car and ran. Defendant did not see him do anything before he got out of the car, and he specifically did not see him throw a gun. Sanchez ran after Shaw, and Godinez opened the front passenger door, leaned into the back seat, grabbed defendant by the collar, and held a gun to his face. The officer didn't say anything to him, and he didn't say anything to the officer.

The officer then put the gun back in his holster, went to the other side, and told defendant to step out of the car. Defendant did not reach into his pocket and did not have a bag with clear plastic bags containing white powder in his pocket. Godinez searched the car, reached under the seat, and recovered a gun. Godinez then reached under the seat again and came out with the plastic bag. Defendant did not put the bag under the seat and had not seen it there before. He did not know that there were drugs or a gun in the car.

Defendant further testified that on April 26, 1988, he was at the house of a woman named Sheila at about 10 p.m. He went there alone and saw Johnny Brewster at Sheila's house. Frank Shaw also was there, with Tracey Brown upstairs. Defendant, Sheila, and Brewster were seated in the kitchen, talking, when Tracey Brown came downstairs to answer a knock at the front door. Less than a minute later, the police entered the house. Defendant had no narcotics on his person and had not sold two tinfoil packets to Boddie.

The parties stipulated to the testimony of Debra Michalski. She was an official court reporter at defendant's preliminary hearing on December 22, 1988, and she prepared a transcript of the testimony of Godinez. It showed that Godinez testified that he, and not Sanchez, recovered the contraband from defendant. Additionally, the stipulated testimony of Marie Szybist was that she was an official court reporter at a hearing on June 28, 1990. She, too, prepared a transcript of the testimony of Godinez and that transcript showed that the 1987 gold Chevrolet traveled approximately three blocks before pulling over after the officers had activated their emergency equipment.

In rebuttal, the State offered into evidence a certified copy of defendant's 1984 conviction for robbery and aggravated battery.

## I

Defendant first argues that the car's broken rear window did not supply the police with the reasonable, articulable suspicion of the commission of a crime required for a valid investigatory stop. Thus, he contends, the stop of the car violated the fourth and fourteenth amendments, and the seized contraband should have been excluded as evidence as fruit of the poisonous tree. He maintains that the circuit court's failure to do so was reversible error.

Because the circuit court ruled the evidence admissible in a pretrial motion hearing, defendant must show that the ruling was against the manifest weight of the evidence. *People v. Brownell* (1980), 79 Ill. 2d 508, 521, 404 N.E.2d 181, *cert. dismissed* (1980), 449 U.S. 811, 66 L. Ed. 2d 14, 101 S. Ct. 59; *People v. Long* (1991), 217 Ill. App. 3d 940, 947, 578 N.E.2d 26, *appeal denied* (1991), 142 Ill. 2d 660, 584 N.E.2d 135.

Defendant argues that the officers had no report that the vehicle was stolen, that they detained the vehicle before receiving an answer to their inquiry, that there was nothing about the vehicle except the broken window which could have contributed to the belief that the vehicle was stolen, and that there was no evidence that the location of the broken window on the vehicle led the police to conclude that the

window was necessarily damaged to facilitate entry into the car. He contends that broken windows may result from accidents or vandalism and are not indicia in and of themselves that the driver or occupants of the vehicle are unauthorized by the owner to possess the vehicle.

The State essentially concedes all of the above arguments, but counters with the fact that the officers testified that they were suspicious of the car simply because it had a broken rear vent window. Both testified consistently that such a fact might be evidence of a stolen car and that their training had taught them so. Further, both defendant and Dean admitted that the window was broken.

■ The issue is thus revealed in sharp relief: is a broken rear window vent on a car sufficient evidence by itself to provide the reasonable, articulable suspicion of the commission of a crime needed for a valid investigatory stop?

Under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, a police officer need not have probable cause to stop a suspect, but must instead

> "be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' [Citation.] The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. [Citation.] That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." (*United States v. Sokolow* (1989), 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585.)

Under *Terry*, then, a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior, even though there is no probable cause to make an arrest.

In *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391, the United States Supreme Court held that, without the required reasonable, articulable suspicion, a police officer could not randomly stop cars to check drivers' licenses or vehicle registrations.

In *People v. James* (1976), 44 Ill. App. 3d 300, 303, 358 N.E.2d 88, the appellate court held that the circuit court properly suppressed evidence found in a defendant's car when the arresting officer admitted he had stopped the defendant's car merely because he "wanted to check the car out and find out what the occupants were doing." As in *Prouse*, a reasonable, articulable suspicion of the commission of a crime was required.

Similarly, in *People v. Brand* (1979), 71 Ill. App. 3d 698, 390 N.E.2d 65, the appellate court found that the circuit court properly

granted the defendant's motion to suppress when the arresting officer testified that he made the investigatory stop because the car was driving 20 miles per hour in a 45-mile-per-hour zone, and a radio check on the license established that the model year for the car was unknown. Even though the police may stop a vehicle that is traveling too slowly, the missing model year which provided the officer's suspicion for the investigatory stop was traceable to a government source and not to the defendant's conduct. The State had failed to show that the defendant's manner of driving was impeding traffic or resulting in danger to other motorists, so the stop violated the fourth and fourteenth amendments.

In *People v. Lagrone* (1984), 124 Ill. App. 3d 301, 303, 464 N.E.2d 712, the appellate court found that the circuit court erred when it refused to suppress evidence obtained after the police stopped a car which was traveling at 10 a.m. with two chairs and a television set in the trunk and the trunk lid open. The officers' suspicion of the commission of a crime simply was not reasonable, given the combination of the commonness of the act of moving furniture in the trunk of a car and the time of day.

On the other hand, in *People v. Martinez* (1990), 206 Ill. App. 3d 813, 822-23, 564 N.E.2d 1271, the court found that police officers properly stopped a late-model Buick at about 1:30 a.m., when the car was of a type known to be preferred by car thieves, and the driver appeared very young. No other indicia of a stolen car were necessary for the officers to have formed a reasonable, articulable suspicion of the commission of a crime.

Similarly, in *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624, our supreme court found that the investigatory stop of two men was proper when the men were seen on foot wearing black clothing at about 1 a.m. in an area with limited pedestrian traffic that had recently been plagued with burglaries. The court held that, although it was a "close call," what the officers saw was "so far removed from the ordinary that any competent police officer could be expected to maintain the status quo [and stop the vehicle] rather than to observe the situation further." *McGowan*, 69 Ill. 2d at 78.

In this case, the question comes down to what a reasonable officer might be expected to do. The officers testified that they had been trained that a broken window on a car is evidence that the car might have been stolen. They testified consistently that this in fact was their suspicion. Had they waited to obtain verification that the car was listed as stolen, they might have lost sight of the car and missed an

opportunity to investigate a possible crime. Even a report that the car was not listed as stolen does not obviate the possibility of a recent theft, and the broken window in itself was sufficient to form the required reasonable, articulable suspicion. The circumstance of a broken window on a late-model car is so far removed from the ordinary that any competent police officer could be expected to stop the vehicle to investigate. While it is true, as defendant argues, that there could be any number of innocent explanations for a broken rear window vent on a late-model car, it is also true that this is a frequent method of breaking into cars to steal them. An innocent explanation would result in a minimal intrusion. The officers' suspicion was both reasonable and articulable, and it cannot be said that the circuit court's decision to admit the evidence seized from defendant's person subsequent to the investigatory stop was against the manifest weight of the evidence.

## II

Defendant next contends that he was denied his right to a fair trial under the sixth and fourteenth amendments by the court's admission of evidence of a prior drug sale by defendant, even though the trial judge gave cautionary instructions to the jury that the evidence was not to be considered relative to the crime with which defendant was charged but only relative to the issue of intent.

In order to reverse a trial judge's ruling on the admission of evidence of other crimes, defendant must show on appeal that the judge abused his discretion. (*People v. Phillips* (1989), 127 Ill. 2d 499, 522, 538 N.E.2d 500, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.) Such evidence of other crimes is admissible to show motive, intent, identity, *modus operandi*, or absence of mistake. (*People v. Thingvold* (1991), 145 Ill. 2d 441, 452-53, 584 N.E.2d 89.) It is admissible if it is relevant for any purpose other than to show propensity to commit crimes. *Thingvold*, 145 Ill. 2d at 452-53; see also *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.

Defendant argues that the prior crime evidence was probative only of his propensity to commit controlled substances crimes. He stands on his testimony that the cocaine was not found on his person, but rather under the seat. Consequently, the issue is not whether he possessed the cocaine with the intent to deliver it, but whether he possessed it at all. Under this view of the issue, the prior crime evidence would be admissible only if relevant to defendant's claim that he had no knowledge of the presence of the cocaine, or to whether he

intended to exercise control over the cocaine which was not found on his person. His participation in a prior, unrelated delivery of cocaine could not tend to prove his intention to exercise control over the cocaine in the car, other than by demonstrating his propensity to commit that offense. Similarly, he contends, someone who has previously sold cocaine is not more likely to know that cocaine is hidden under the driver's seat of a car in which he is a passenger.

Further, defendant argues that even if he were found to have possessed the cocaine, evidence that he had delivered cocaine seven months earlier was not probative of whether he intended to deliver the cocaine he was charged with possessing in this case. The circumstances of the two cases were simply too dissimilar, and the prior delivery too remote and unrelated to the charged offense.

The State argues that the trial judge did not abuse his discretion because the evidence was admitted solely for the purpose of establishing defendant's intent, the judge gave extensive limiting instructions on the use of the evidence at the time of the objection, and the jury was also given instructions at the end of the trial on limiting the use of the information.

The judge instructed the jury orally as follows:

"The defendant is charged with possession of a controlled substance with intent to deliver. [Boddie's] testimony is not to be considered for any other purpose. It is not to be considered relative to the issue as to whether or not the defendant committed this offense, as such is charged, but solely on the issue of intent."

In addition, the jury was given two instructions at the end of the case relating to the other crime evidence. The jurors were told that "[a]ny evidence received for a limited purpose should not be considered by you for any other purpose," and that "[e]vidence has been received that the defendant has been involved in an offense other than that charged in the information. This evidence has been received solely on the issue of the defendant's intent. This evidence may be considered by you only for the limited purposes for which it was received."

It cannot be said that because the earlier case was too dissimilar or too remote in time it is not relevant to the issue of intent in the charged offense. Boddie testified that only seven months earlier, defendant had sold him two "dime bags," each containing approximately .10 gram of a substance containing cocaine. In this case, Sanchez seized a plastic bag containing 180 "dime bags" from defendant's person. While the April delivery was of bags made of foil and

the bags seized in November were made of plastic, the bags in each case contained approximately .10 gram of a substance containing cocaine. Defendant was certainly aware of the usual method of delivery and pricing, and the evidence of the April delivery was directly relevant to defendant's intent to deliver the substance recovered in the November seizure.

Additionally, the jury acquitted defendant of possession with intent to deliver. It clearly did not find the other crime evidence persuasive on the issue of intent. We find unavailing defendant's argument that the hung jury in the first trial, where the other crime evidence was not introduced, shows that the other crime evidence was relevant only to his propensity to commit controlled substance crimes.

Because the other crime evidence was admitted on the issue of intent, and because the court's decision on its admissibility is supported by the record, it cannot be said that the trial judge abused his discretion.

## III

Defendant's third contention is that he was denied his sixth and fourteenth amendment right of confrontation where he was not permitted to cross-examine the arresting officers regarding their estimate of the weight of the substance recovered from defendant, which discredited their testimony that defendant had 180 packets of cocaine in his pocket.

Defendant argues that the jury could have considered the weight discrepancy (the officers estimated the weight of the white powder seized as eight grams, while the chemist weighed it as 16 grams) as raising a reasonable doubt that the substance found by the chemist to be cocaine was the substance recovered from him. Had counsel been allowed to cross-examine the officers fully on their estimate of the weight, he contends, the jury might have acquitted him on the possession charge. He concludes that the restrictions placed on cross-examination thus denied him his right of confrontation and requires reversal of his conviction.

The State responds that defendant has waived this issue by stipulating to the quantity of drugs at his trial. Alternatively, the State argues that cross-examination was properly curtailed because the testimony would have been speculative in nature and not offered by someone qualified to testify as an expert.

■ While it is true that, on appeal, defendant cannot object to something to which he stipulated at trial (*People v. Miller* (1991), 218 Ill. App. 3d 668, 578 N.E.2d 1065, *appeal denied* (1991), 142 Ill. 2d

661, 584 N.E.2d 136; *People v. Williams* (1990), 200 Ill. App. 3d 503, 558 N.E.2d 261), defendant here is not objecting to the actual weight of the substance containing cocaine. He apparently objects instead to the conclusion by the jury that the substance seized was the substance analyzed and stipulated to, claiming that conclusion might have been different had he been allowed full cross-examination.

Defendant, however, also stipulated to the chain of custody of the contraband. He cannot now claim that he might have raised a reasonable doubt about the chain of custody had he been allowed to cross-examine the officers more fully. This issue has been waived.

## IV

Defendant's fourth contention is that he was denied his sixth and fourteenth amendment right to effective assistance of counsel where counsel failed to impeach prosecution witnesses with their prior inconsistent statements and neglected to submit instructions which would have permitted the jury to consider as substantive evidence the impeaching statements which were consistent with his theory.

Defendant argues that, although counsel attacked the credibility of the arresting officers by impeaching their testimony with their prior inconsistent statements, and argued the improbability of their version of the events leading to the discovery of the cocaine, counsel failed to impeach the officers' testimony with other significant prior inconsistent statement evidence which advanced the theory of his defense. This failure, he contends, combined with counsel's failure to submit appropriate jury instructions, was a professionally unreasonable deficiency in performance which undermines confidence in the reliability of the jury's verdict, requiring a reversal of his conviction.

The State argues that defense counsel's vigorous cross-examination of prosecution witnesses, combined with the presentation of defense witnesses to counter the State's theory of the case, established effective assistance of counsel.

In order to establish ineffective assistance of counsel, defendant must demonstrate on appeal that: (1) his trial counsel's conduct was deficient, and (2) that conduct was so deficient that he was prejudiced. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Both prongs of the two-part test must be satisfied.

To satisfy the first prong, defendant must identify the acts or omissions of counsel alleged not to be the result of reasonable professional judgment, and establish that they fell below an objective standard of reasonableness. (*Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at

695, 104 S. Ct. at 2066.) To satisfy the second prong, defendant must show that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Defendant's theory of the case was that the arresting officers lied about obtaining the cocaine from his person. There was a great deal of testimony, in both direct and cross-examination, regarding when the officers turned on their emergency lights when stopping the car and how far the car traveled before stopping. Defendant maintains that additional impeachment of the officers' testimony with prior inconsistent statement evidence on this issue might have lessened their credibility and changed the result. Additionally, defendant claims he would have benefited from an instruction that the jury could have considered some of the prior inconsistent statement evidence substantively.

■ Defense counsel, however, did in fact impeach Godinez with his prior inconsistent statements at the preliminary hearing and with his prior inconsistent statements at the hearing on the motion to suppress. There is no showing that additional impeachment would have changed the result, nor that an additional instruction would have changed the jury's judgment on the issue of credibility. As defendant points out, the State's case against defendant hinged on the credibility of the officers, and essentially the jury chose to believe the officers rather than defendant. Defendant's statements in his briefs, that "[t]here can be no confidence that the jury would have reached the same verdict" and that "the jury may have credited defendant's version," simply do not meet the level of proof required to satisfy the second prong of *Strickland*. Accordingly, defendant has failed to establish that he received ineffective assistance of counsel.

## V

Finally, defendant contends, and the State agrees, that the mittimus must be corrected to reflect the offense of which defendant was convicted. Although defendant was charged with possession of a controlled substance with intent to deliver, the jury found him guilty of simple possession. Despite the verdict, the order of sentence and commitment reflects that defendant was sentenced to imprisonment for seven years for possession with intent to deliver.

■ The proper remedy is to amend the mittimus to conform to the judgment entered by the court. (*People v. Mitchell* (1992), 234 Ill. App. 3d 912, 921, 601 N.E.2d 916.) Here, that judgment was guilty of

possession of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(a)(2)(A)). We therefore order, pursuant to Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), that the mittimus be corrected to reflect defendant's conviction for possession, rather than for possession with intent to deliver.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

HARTMAN and SCARIANO, JJ., concur.