**Carl R. DENTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 41A05–0309–CR–488.

Court of Appeals of Indiana.

April 6, 2004.

Matt Rumble, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monica Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Today we hold that the fact that the vehicle the defendant was driving had what appeared to be a broken rear window did not, without more, afford police a reasonable suspicion that the vehicle was stolen so as to justify an investigatory stop. Appellant-defendant Carl R. Denton, Jr., appeals his conviction for Operating a Motor Vehicle After Having Been Adjudged a Habitual Traffic Violator,[1] a class D felony. Specifically, Denton challenges the denial of his motion to suppress on the grounds that the arresting police officer improperly stopped his vehicle and further argues that the State failed to show that his driver's license was validly suspended in accor-

---

1. Ind.Code § 9–30–10–16.

dance with Indiana Code section 9–30–10–5. Inasmuch as we conclude that the traffic stop was unlawful and therefore reverse the judgment of the trial court on that basis, we need not address Denton's argument regarding the suspension of his driver's license.

## FACTS [2]

On May 25, 2001, at approximately 2:10 p.m., Major Randy Werden, a Johnson County Sheriff's Department deputy, was on routine patrol. At one point, Major Werden noticed an individual who was subsequently identified as Denton, driving a 1987 Oldsmobile with a rear passenger or driver's side window that he thought had been broken out. He then pulled in behind the vehicle and began to follow it. Although it had been raining quite heavily, Major Werden noticed that there was no plastic covering on the window.

Suspecting that the vehicle may have been stolen because of the broken window, Major Werden radioed in the license plate number, but the dispatcher at the Sheriff's Department advised him that the computer system was not functioning properly and that the license plate number could not be tracked. Thus, Major Werden activated his lights and stopped the vehicle. When Major Werden approached, he noticed broken glass on the back seat.

He then requested Denton's license and registration, whereupon Denton responded that both documents were at his residence. Instead, Denton handed Major Werden a work identification card, which included his name and social security number. Major Werden again asked Denton for the registration and suggested that Denton look in his glove box. When Denton opened the box, the registration fell out. Major Werden then contacted the dispatcher in

Greenwood and learned that the vehicle was, in fact, registered to Denton. However, Major Werden was also informed that Denton's driving privileges had been suspended because he had been adjudged a habitual traffic violator (HTV). Denton acknowledged to Major Werden that he knew he was a HTV. As a result, Denton was charged with the above offense.

Thereafter, on May 31, 2002, Denton filed a motion to suppress, alleging that the initial stop of the vehicle was improper because Major Werden had not observed any traffic or equipment violation or any suspicious behavior by Denton that may have justified the stop. At the suppression hearing, Major Werden testified that his eighteen years of experience as a police officer taught him that vehicle thieves typically break "unsuspecting windows," such as rear wing windows or driver's side wing windows. Tr. p. 3. Therefore, the State argued that the stop was proper. The trial court ultimately denied this motion on December 12, 2002, and the case proceeded to a bench trial on March 5, 2003.

At trial, it was revealed that the Bureau of Motor Vehicles (BMV) was preparing to suspend Denton's driving privileges for ten years as of September 2, 1997. Thus, on September 3, the Driver Improvement Safety (DIS) division of the BMV entered the suspension into Denton's driver's record and attempted to notify Denton of his pending HTV status by mailing a notice of the suspension to him at 1345 South Jefferson Street in Brownsburg. The BMV purportedly had obtained this address from a probable cause affidavit and thus changed Denton's address in September 1992. However, the alleged probable cause affidavit was not in Denton's BMV packet and was not offered into evidence.

---

**2.** Oral argument was held in this case on March 23, 2004 in Indianapolis. We commend appellate counsel for their most able and insightful presentations.

Before this notice of suspension was sent, however, Denton had renewed his "identification card" with the BMV on March 13, 1992, and gave his address as 6111 Elaine Street in Indianapolis.

The contents of the September 3 notice sent by the BMV included: (1) the offenses that were the bases for the suspension; (2) the beginning and ending dates of the suspension; and (3) notice of the administrative and judicial remedies available. However, this notice was marked undeliverable and was returned to the BMV. Thereafter, the BMV sent two additional notices of suspension to the Brownsburg address on October 3, 1997, and neither was returned. Both of the October 3, 1997 notices contained the date that the suspension was to end. Additionally, one of them advised of administrative remedies that were available to Denton, but neither one set forth the possible judicial remedies that could be sought. At the conclusion of the trial, Denton was found guilty as charged, and he now appeals.

## DISCUSSION AND DECISION

▮ Denton claims that the trial court erred in denying his motion to suppress. Specifically, Denton argues that Major Werden improperly stopped the vehicle because there was no probable cause or reasonable articulable suspicion to do so.

▮ In resolving this issue, this court will review a denial of a motion to suppress as a sufficiency of the evidence claim. *See Griffith v. State*, 788 N.E.2d 835, 839 (Ind. 2003). That is, we will not reweigh the evidence or judge the credibility of witnesses, and will consider only conflicting evidence that is most favorable to the trial court's ruling. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001). To prevail on appeal, the challenging party must demonstrate that the trial court's ruling is con-

trary to law. *State v. Glass*, 769 N.E.2d 639, 641 (Ind.Ct.App.2002), *trans. denied.*

▮ Turning to the merits of this issue, we note that the Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *Parker v. State*, 697 N.E.2d 1265, 1267 (Ind.Ct.App. 1998). The police may stop an individual for investigatory purposes if, based on specific, articulable facts, the officer has a reasonable suspicion that criminal activity is afoot. *Finger v. State*, 799 N.E.2d 528, 532 (Ind.2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Such reasonable suspicion must be comprised of more than hunches or unparticularized suspicions. *Id.* That is, a police officer must be able to point to specific facts giving rise to a reasonable suspicion of criminal activity. *Finger*, 799 N.E.2d at 533–34. On review, this court considers whether the facts known by the police at the time of the stop were sufficient for a man of reasonable caution to believe that an investigation is appropriate. *Sowell v. State*, 784 N.E.2d 980, 983 (Ind. Ct.App.2003). The grounds for such a suspicion must be based on the totality of the circumstances. *Coates v. State*, 650 N.E.2d 58, 60 (Ind.Ct.App.1995), *trans. denied.*

▮▮ We also note that a "reasonable suspicion" entails some minimum level of objective evidentiary justification. *Delaware v. Prouse*, 440 U.S. 648, 655, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion. *U.S. v. Sokolow*, 490 U.S. 1, 10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). It is the requirement of reasonable suspicion that strikes a balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation

of privacy. *Cash v. State*, 593 N.E.2d 1267, 1268 (Ind.Ct.App.1992).

In essence, the only factor articulated by Major Werden as the justification for the stop was that one of the rear windows appeared to have been broken. Based upon this fact alone, Major Werden surmised that the vehicle had been stolen. The record reveals no evidence that the stop was made for a traffic or equipment violation, and there was no allegation that the vehicle was unsafe. Moreover, no evidence was offered at the suppression hearing or at trial suggesting that Denton ever displayed any evasive or furtive gestures that were observed by Major Werden. Further, there was no evidence demonstrating that any vehicles matching the description of Denton's car had recently been reported stolen. Hence, it is apparent to us that the stop was based solely upon Major Werden's mere suspicion that the vehicle was stolen in light of the condition of the window.

Major Werden obviously observed the window in terms of crime, but of course a window can also be accidentally broken. This court is deferential to police officer training and experience, and we certainly recognize that a trained officer can properly act on a suspicion that would elude an untrained eye. However, in this case, Major Werden's stated rationale for stopping this vehicle would support stopping any car at all with a broken window. In short, there does not appear, in the record before us, to have been an assessment based on training or experience that this particular broken window indicated that the vehicle was stolen.[3]

In light of these circumstances, we must conclude that the stop was based upon nothing more than an unparticularized suspicion and, therefore, Major Werden lacked the reasonable suspicion or probable cause necessary to justify his actions in stopping the vehicle. Therefore, the motion to suppress should have been granted, and the judgment of the trial court is reversed.[4]

NAJAM, J., and RILEY, J., concur.

---

3. While a split of authority exists with respect to this issue, we reject the view advanced by several other jurisdictions recognizing that a broken automobile window *alone* is sufficient to provide a reasonable suspicion for the stop. *See People v. Brown*, 255 Ill.App.3d 425, 194 Ill.Dec. 224, 627 N.E.2d 340 (1993); *U.S. v. Gonzales–Quinonez*, 287 F.Supp.2d 1032 (D.Ariz.2003); *Commonwealth v. Rogers*, 741 A.2d 813 (Pa.Super.1999); *Logan v. Commonwealth*, 19 Va.App. 437, 452 S.E.2d 364 (1994); *Johnson v. State*, 43 Ark.App. 145, 862 S.W.2d 290 (1993); *but see People v. Chism*, 194 A.D.2d 351, 598 N.Y.S.2d 481 (N.Y.A.D. 1 Dept.1993) (holding that a broken car window without more is insufficient to provide reasonable suspicion for a stop); *State v. Britton*, 604 N.W.2d 84 (Minn.2000) (same).

4. Although we need not address Denton's sufficiency of the evidence argument in light of our reversal on this issue, it is interesting to note that our supreme court has declared that an incomplete or untimely suspension notice sent by the BMV or the failure to outline the opportunity for judicial review in an initial HTV suspension notice will not warrant an automatic reversal of a suspension. *See Groce v. State*, 778 N.E.2d 785, 786–87 (Ind. 2002); *State v. Hammond*, 761 N.E.2d 812, 815 (Ind.2002); *Stewart v. State*, 721 N.E.2d 876, 879–80 (Ind.1999). In light of these cases, the State need only show that the defendant had been driving and that he knew he was an HTV, thereby nullifying the notice requirements set forth in Indiana Code section 9–30–10–5.

In this case, the State does not challenge that proper notice had not been sent to Den-

ton by the BMV. To be sure, as recounted in the *FACTS*, the BMV sent its notice to Denton at a Brownsburg address that had purportedly been obtained from a probable cause affidavit. The affidavit was not admitted into evidence and the record is devoid of testimony regarding where the affidavit originated, what agency had generated it, what the charges were or if they had even been filed, and whether the address contained in that affidavit was obtained from Denton or from some other source. Aside from Denton's acknowledgement to Major Werden that he "knew he was HTV," Tr. p. 11, the record shows that the BMV relied upon an unidentified document, from an unidentified case that had been generated by an unidentified source when determining that the Brownsburg address was appropriate for the purpose of sending notice to Denton. Except for the affidavit referred to but not admitted, there is no evidence in the record that Denton ever lived at the Brownsburg address.

Inasmuch as this matter was tried to the bench and the trial judge was required not to consider irrelevant and inadmissible evidence, we must conclude that Senior Judge Stewart relied on the cases decided by our supreme court indicating that the State only had to demonstrate that the defendant was driving and that he knew of his HTV status in order to convict Denton of the charged offense.