Jason G. ERTEL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–0908–CR–824.

Court of Appeals of Indiana.

June 16, 2010.

Transfer Denied Sept. 9, 2010.

John D. Fierek, Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kathy Bradley, Deputy Attorney General, James E. Porter, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Jason G. Ertel (Ertel), appeals his conviction for operating a vehicle while intoxicated, a Class C misdemeanor, Ind.Code § 9–30–5–2(a).

We affirm.[1]

### ISSUE

Ertel raises one issue for our review, which we restate as follows: Whether the trial court abused its discretion when it admitted evidence obtained after Ertel's vehicle was stopped.

### FACTS AND PROCEDURAL HISTORY

On May 21, 2008, at approximately 2:00 a.m., Jackie Reed (Reed) called 911 to report that an unknown white male, who was later identified as Ertel, wearing a red shirt and driving a dark colored car, had rung her doorbell and then left. Officer Michael Wilcox (Officer Wilcox) with the Fishers Police Department responded to the 911 dispatch. Initially, Officer Wilcox was unsure about the nature of the call and stated "[a]t that time in the morning, it could be a lot of different things. We don't know if it is just somebody knocking on a door trying to find out if anybody is home. Or they want to commit a burglary...." (Suppression Hearing Transcript pp. 14–15). While en route to Reed's residence, a 911 dispatch informed Officer Wilcox that "the vehicle had left and the vehicle had returned again." (Suppr. Hearing Tr. p. 12). As Ertel attempted to exit the neighborhood, he went down Reed's road, which is a cul-de-sac, and passed Reed's house again. At this point, a neighbor waived a flashlight at Ertel's vehicle but he did not stop.

Officer Wilcox drove into the neighborhood and saw a dark colored vehicle sitting at a four-way stop near Reed's residence for approximately five seconds. As the vehicle passed Officer Wilcox, he observed that Ertel had both hands on the wheel and that he was staring straight ahead. Officer Wilcox believed, based on his experience, that Ertel's behavior was "an unconscious [sic] way that somebody might say ['] you can't see me going past you.[']" (Transcript p. 97). As Officer Wilcox noticed that Ertel fit the description of the man described by dispatch, he made a u-turn and activated his lights in an attempt

1. We held an oral argument in this case on May 7, 2010, at Kankakee Valley High School in Wheatfield, Indiana. We thank Kankakee Valley High School for its hospitality in hosting the argument and counsel for their excellent advocacy.

to pull Ertel over. Ertel pulled over after approximately a quarter of a mile.

Officer Wilcox approached the driver's side of Ertel's car and asked him for his license and registration, during which he noticed that Ertel's "eyes kept moving around." (Tr. p. 14). Officer Wilcox asked Ertel what was "going on" and Ertel responded "nothing." (Tr. p. 99). He then asked Ertel if he had knocked on someone's door, Ertel responded affirmatively and added that he had been looking for a friend that he had text messaged earlier. When asked his friend's name, Ertel began looking around and eventually said his friend's name was Karen. When asked her last name, his eyes began "darting back and forth" and he said "Smith." (Tr. p. 99). Officer Wilcox asked Ertel if he had been drinking, and he responded that he had drunk two beers earlier that evening with dinner.

As Officer Wilcox returned to his car, Officer James Hawkins (Officer Hawkins) arrived at the scene. Officer Wilcox told Officer Hawkins that he suspected Ertel was intoxicated and that they should conduct field sobriety tests. Once Ertel got out of the vehicle, Office Hawkins observed that Ertel lost his balance. Additionally, Ertel smelled of alcohol, that his eyes were red and watery, and that his speech was slowed and slurred. Ertel submitted to field sobriety tests and failed three. The Officers asked Ertel if he was interested in taking a chemical test and Ertel agreed. He was transported to the Fishers Police Department where a breath test registered his blood alcohol content at .08.

On May 28, 2008, the State filed an Information charging Ertel with Count I, operating a vehicle while intoxicated, a Class C misdemeanor, I.C. § 9–30–5–2(a) and Count II, operating a vehicle with an alcohol concentration equivalent of at least .08, but less than .15, per 210 liters of breath, a Class C misdemeanor, I.C. § 9–30–5–1(a). On October 21, 2008, Ertel filed a motion to suppress evidence. A hearing was held on Ertel's motion. On March 5, 2009, the trial court entered a written Order denying his motion. Ertel filed a motion to reconsider on his motion to suppress and a motion to certify interlocutory order. The trial court denied both motions on April 23, 2009.

A jury trial was held on April 30, 2009. Ertel was found guilty as charged on both Counts. The trial court entered judgment of conviction on Count I and vacated the conviction on Count II. On May 12, 2009, Ertel was sentenced to sixty days in jail, with fifty-eight days suspended, one year of probation, and a one-year license suspension for his conviction.

Ertel now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

The admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of discretion. *Redding v. State*, 844 N.E.2d 1067, 1069 (Ind.Ct.App.2006), *reh'g denied*. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

### II. The Stop

Ertel contends that the trial court abused its discretion when it admitted evidence obtained after his vehicle was seized illegally. Specifically, Ertel contends that Officer Wilcox lacked reasonable suspicion to conduct an investigatory stop and that the seizure violated his Fourth Amendment.

■ The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Moultry v.State*, 808 N.E.2d 168, 170 (Ind. Ct.App.2004). Evidence obtained in violation of the Fourth Amendment may not be used against a defendant at trial. *Rice v. State*, 916 N.E.2d 296, 301 (Ind.Ct.App. 2009). A police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot." *Moultry*, 808 N.E.2d at 170–71 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ "Reasonable suspicion is a 'somewhat abstract' concept, not readily reduced to 'a neat set of legal rules.'" *Id.* at 171 (quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). "When making a reasonable suspicion determination, reviewing courts examine the 'totality of the circumstances' of the case to see whether the detaining officer had a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.* (quoting *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744). The reasonable suspicion requirement is met where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Id.* It is well settled that "reasonable suspicion must be comprised of more than an officer's general 'hunches' or unparticularized suspicions." *Webb v. State*, 714 N.E.2d 787, 788 (Ind.Ct.App. 1999) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868). Reasonable suspicion, which justifies an investigatory stop, is less demanding than probable cause and requires a showing considerably less than a preponderance of the evidence, but still requires a minimal level of objective justification and more than an inchoate and unparticularized suspicion or hunch of criminal activity. *Wells v. State*, 922 N.E.2d 697, 700–701 (Ind.Ct.App.2010).

Ertel cites to *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), for the proposition that a police officer may make a *Terry* stop of a vehicle if the officer has reasonable and articulable suspicion that (1) the driver is unlicensed; (2) the vehicle is unregistered; or (3) the vehicle or an occupant is subject to seizure for a violation of the law. Here, Ertel argues, the Officers did not testify that they seized him because they had reasonable suspicion that (1) he did not have a license; (2) his car was unregistered; or (3) he was subject to seizure for violation of a law.

In *Prouse*, a police officer pulled over the defendant for a spot check. *Id.* at 651. The officer had not observed any traffic violations or any suspicious activity; instead made the stop merely to check the driver's license and registration. *Id.* During the stop, the officer saw marijuana in plain view on the car floor and subsequently arrested Prouse. *Id.* The Supreme Court held that "[w]hen there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations," then police officers may not stop individuals for nothing more than a spot check. *Id.* at 661. "This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent." *Id.*

Ertel also cites to *Denton v. State,* 805 N.E.2d 852, 853 (Ind.Ct.App.2004), *trans. denied,* where a police officer suspected that Denton had stolen a car based on the fact that the car he was driving had a broken rear window. In reversing the trial court's denial of Denton's motion to suppress, this court held that there was no evidence in the record to suggest that other than the fact that the rear window was broken, "the stop was based upon nothing more than an unparticularized suspicion and, therefore, [the officer] lacked reasonable suspicion or probable cause necessary to justify his actions in stopping the vehicle." *Id.* at 856.

We agree with the State that Ertel's reliance on *Prouse* is misplaced, because when considering the totality of the circumstances, Officer Wilcox did not stop Ertel for a spot check as in *Prouse;* instead, he had reasonable suspicion to pull Ertel over. We look to *R.H. v. State,* 916 N.E.2d 260 (Ind.Ct.App.2009), *trans. denied,* to be instructive. While we determined in that case that the initial encounter did not constitute an investigatory stop, thus, eliminating our need to address whether the officer had the requisite reasonable suspicion required under *Terry,* we find this case to be helpful because of the similarities in the facts. In that case, R.H. argued that he was illegally detained in violation of the Fourth Amendment, and that the evidence obtained pursuant to that detention was inadmissible. *Id.* at 263. He also argued that the officer lacked reasonable suspicion to conduct an investigatory stop. *Id.* In that case, the officer responded to a 911 dispatch reporting a suspicious car that the caller did not recognize with four males inside of it parked in front of the caller's residence at 11:40 p.m. *Id.* at 262–263. The officer activated his lights and approached the car. Ultimately, the State alleged R.H. to

be a delinquent child for committing an act that would constitute a Class A misdemeanor possession of marijuana, if committed by an adult. *Id.* This court held that given the objective and articulable facts, the officer's approach and initial contact with R.H. did not amount to a seizure under the Fourth Amendment. *Id.* at 266. In his concurring opinion, Judge Mathias stated:

> We as a society desire our law enforcement organizations to respond in situations like the one before us in exactly the way the officer conducted himself. A healthy, civil society is most robust when it feels safe and when that feeling of safety is validated through interaction with vigilant and responsive law enforcement engaged in the important business of policing neighborhoods within a community. Simply said, we all want to be able to depend upon law enforcement to check on the occupants of vehicles in circumstances like those before us.

*Id.* at 268. We agree with Judge Mathias' sentiment that when a concerned citizen calls 911, especially considering the fact that the 911 call occurred during the late evening hours similar to the *R.H.* case, we want our law enforcement to respond the way in which Officer Wilcox responded. Given the fact-sensitive nature of each case, we consider the facts as a whole and find that Officer Wilcox had reasonable suspicion to conduct an investigatory stop. The record indicates that Officer Wilcox received a 911 dispatch report that a white male, wearing a red shirt and driving a dark colored car, had rung Reed's doorbell at approximately 2:00 a.m. Officer Wilcox was also told that the driver had driven past Reed's home again, and failed to stop after being flagged down by a neighbor. As Officer Wilcox approached the neighborhood, he noticed a vehicle stopped at a stop sign for approximately five seconds that not only matched the description giv-

en by dispatch, but also that the driver "had a red shirt on that match[ed] the description of the person given by our dispatch of the person ringing the door-bell." (Tr. p. 96). Despite the fact that Ertel argues that waiting at a stop sign for over five seconds was not a violation of traffic laws and consistent with someone who is lost, given the facts as a whole, namely that it was 2:00 a.m. in the morn-ing, that both Ertel and his vehicle fit the description given by the 911 caller, and that Ertel had refused to stop after being flagged by a neighbor, Officer Wilcox had reasonable suspicion to pull Ertel over.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discre-tion when it admitted evidence obtained after Ertel's vehicle was stopped because Officer Wilcox had reasonable suspicion to conduct an investigatory stop.

Affirmed.

ROBB, J., concurs.

VAIDIK, J., concurs in result.