JONATHAN WAVERLY LOGAN, a/k/a
ERIC MONTAGUE VAUGHAN

v.

COMMONWEALTH OF VIRGINIA

No. 2342-92-2

Decided March 29, 1994

COUNSEL

John B. Mann (Levit & Mann, on brief), for appellant.

Robert B. Condon, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Jonathan Waverly Logan (Logan) was convicted at a bench trial in the Circuit Court of the City of Richmond on charges of possession of cocaine with intent to distribute, possession of a firearm after having been convicted of a felony, and possession of a firearm while in possession of cocaine. The trial court sentenced Logan to ten years imprisonment for possession of cocaine with intent to distribute and suspended imposition of sentence on the two other convictions. In this appeal, Logan asserts that police lacked reasonable suspicion to initiate the traffic stop that resulted in his arrest and the subsequent discovery of the cocaine and weapon in the search incident to that arrest. For the reasons that follow, we reverse Logan's convictions.[1]

I.

FACTUAL BACKGROUND

On the night of February 5, 1992 patrol officers Linda Tyler (Tyler) and Martin Harrison of the City of Richmond Police Department observed a Jeep Wagoneer with what appeared to be a broken or missing rear window vent on the passenger side. Tyler testified that her attention was drawn to the vent window because it was not reflecting light in the same way as the other windows. Tyler testified that she had considerable experience in recovery of stolen vehicles. Her experience suggested that a broken vent window on this type of vehicle often indicated that the vehicle had been broken into and stolen. The officers observed no other suspicious circumstances. Because of unusually heavy radio traffic, the officers were not able to obtain further information on the vehicle.

---

[1] Logan also asserts that, even if the initial traffic stop was lawful, the evidence was insufficient to show he had constructive possession of the weapon found in the car. Because our resolution of the Fourth Amendment issue requires dismissal of the case against Logan, we need not reach this latter issue.

The officers decided to stop the vehicle to check the registration. Tyler noted that the City of Richmond decal had been torn off and replaced; the year indicator on the decal was upside down. Logan produced a driver's license for identification, but did not have a registration for the vehicle. A DMV check revealed that there was an outstanding arrest warrant on Logan.

After placing Logan under arrest, the officers searched Logan and recovered five bags of cocaine, a pager and over one thousand dollars in cash. When Tyler asked if Logan had a weapon in the car, he replied, "Is this a dangerous area?" A subsequent search of the vehicle revealed a gun hidden behind an infant carrier seat on the back seat of the vehicle. Logan later stated that the gun belonged to his girlfriend.

In a suppression hearing immediately prior to trial, Logan presented evidence that his vehicle had been broken into prior to the night he was arrested. Logan testified that the thieves had gained access to the vehicle by breaking the vent window. Logan further testified that he later had the window repaired with plexiglass. The court denied without comment Logan's motion to suppress the cocaine and the gun.

## II.

### REASONABLE SUSPICION TO INITIATE TRAFFIC STOP

The question of whether observation of a broken vent window on a vehicle gives rise to a reasonable suspicion of criminal activity sufficient to warrant an investigatory stop of the vehicle is an issue of first impression in this Commonwealth. We begin our analysis by recognizing that "[w]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief." *Zimmerman v. Commonwealth*, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988) (citations omitted).

In order to justify an investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in or have recently been involved in some form of criminal activity. *Waugh v. Commonwealth*, 12 Va. App. 620, 621-22, 405 S.E.2d 429, 429 (1991).

Although the Commonwealth has the burden of proving that such an investigatory stop is lawful, *Murphy v. Commonwealth*, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989), the "level of suspicion required [for an investigative stop] is less demanding than the standard of probable cause." *Quigley v. Commonwealth*, 14 Va. App. 28, 33, 414 S.E.2d 851, 854 (1992).

As the crime suspected by the officers was that of auto theft, the specific question posed is what would have reasonably justified their suspicion that the car driven by Logan had been stolen. The officers observed that the vent window was different from the other windows of Logan's vehicle. Tyler thought that the window was missing, although a closer examination would have revealed that the window was fitted with non-reflective plexiglass. A broken or missing car window is at least as easily suggestive of vandalism, accident or a prior theft of the vehicle or its contents. We do not discount the officers' knowledge that breaking the vent window is a common form of entry used by thieves; nonetheless, we hold that observation of a broken vent window, without more, does not establish a reasonable suspicion that a violation of law had occurred or was occurring. *Cf. Zimmerman*, 234 Va. at 612, 363 S.E.2d at 710 (when passenger and driver were observed changing positions after encounter with police, this innocuous act was insufficient to give rise to a suspicion that the original driver did not have an operator's permit).[2]

---

[2] Our holding in this case is generally in accord with the position taken by courts of other states that have addressed this question. In *People v. Elam*, the New York State Appellate Division reached the same result under virtually identical circumstances. 584 N.Y.S.2d 780, 781 (N.Y. App. Div. 1992). *But cf. Commonwealth v. Epps*, 608 A.2d 1095, 1097 (Pa. Super. Ct. 1992) (under facts similar to *Elam* and the present case, the court said, "the broken rear vent window, as understood by those versed in the field of law enforcement, constituted sufficient grounds to give rise to reasonable suspicion"). Other courts have found that if additional suspicious circumstances exist, an investigatory stop of a vehicle with a broken or missing vent window is justified. For example, the District of Columbia Court of Appeals held that an officer was justified in stopping a vehicle on suspicion of theft after noting that it had a broken vent window *and* observing the driver, who appeared underage, attempt an illegal turn. *In re C.A.P.*, 663 A.2d 787, 789 (D.C. 1993); *see also Johnson v. State*, 862 S.W.2d 290, 291 (Ark. Ct. App. 1993) (after observing vehicle with broken vent window, officer noted that driver became agitated and attempted to evade the officer); *People v. Bramble*, 600 N.Y.S.2d 1005, 1008 n.* (N.Y. Sup. Ct. 1993) (where vehicle's trunk lock was missing, a door lock was damaged and a fork was stuck in the ignition which had been tampered with, the court "declines to apply so restrictive a precedent"); *State v. Serrano*, 544 P.2d 101, 103 (Wash. Ct. App. 1975) (where officers while patrolling residential area shortly before 1:00 a.m. passed completely dark-

Because the officers lacked a reasonable, articulable suspicion for the seizure, the stop of Logan's vehicle was in violation of Logan's Fourth Amendment right to be free from unreasonable seizures. All of the events thereafter flowed from that unlawful seizure. Accordingly, the trial judge erred in not suppressing the cocaine and gun discovered during the seizure. We reverse Logan's convictions and dismiss the charges against him.

*Reversed and dismissed.*

Benton, J., and Elder, J., concurred.

---

ened house just as old car began backing out of driveway, observed a car with a broken wing window and observed passenger appear to be stuffing something under the front seat, a cursory stop was justified to enable police to satisfy themselves that the car had not been stolen or that the passenger had not been concealing spoils of burglary in the house); *State v. Davis*, 527 P.2d 1131, 1133 (Wash. Ct. App. 1974) (stop of vehicle with repaired vent window justified where vehicle was being driven in an erratic manner).