Richmond

JOHNATHAN WAVERLY LOGAN, a/k/a
ERIC MONTAGUE VAUGHAN

v.

COMMONWEALTH OF VIRGINIA

No. 2342-92-2

Decided December 20, 1994

438

COUNSEL

John B. Mann (Levit & Mann, on brief), for appellant.

Robert B. Condon, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

## UPON A REHEARING EN BANC

OPINION

**MOON, C.J.**—This Court granted the Commonwealth's request for a rehearing *en banc* from a panel decision reversing John Waverly Logan's convictions. The panel held that the discovery of the evidence used to convict Logan flowed from an unlawful seizure because the officers who arrested Logan lacked a reasonable, articulable suspicion for stopping him.

This case initially came before this Court on an appeal from the Circuit Court of the City of Richmond which, on August 17, 1992, entered final judgment convicting Jonathan Waverly Logan on charges of possession of cocaine with intent to distribute, possession of a firearm after having been convicted of a felony, and possession of a firearm while in possession of cocaine. In his appeal, Logan asserted that police lacked reasonable suspicion to initiate the traffic stop that resulted in his arrest and the subsequent discovery of the cocaine and a weapon in the search incident to that arrest. Logan also asserted that, even if the initial traffic stop was lawful, the evidence was insufficient to show that he had constructive possession of the weapon found in the car. As a result of its holding on the Fourth Amendment issue, requiring dismissal of the case, the panel never reached the merits of the latter issue.

We affirm the judgment because we hold that the evidence was sufficient to support the trial court's finding that the officers had a reasonable and articulable suspicion for stopping the vehicle. We also hold that the evidence was sufficient to show Logan had constructive possession of the weapon found in the car.

### I.

### FACTUAL BACKGROUND

On the night of February 5, 1992 patrol officers Linda Tyler and Martin Harrison of the City of Richmond Police Department observed a Jeep Wagoneer with what appeared to be a broken or missing rear window vent on the passenger side. Tyler, a six year veteran on the police force, testified that her attention was drawn to the vent window because it was not reflecting light in the same way as the other windows. Tyler testified that she had considerable experience in recovery of stolen vehicles and, in her career on the force, had recovered about 200 stolen vehicles. Her experience

and training suggested that a broken vent window on this type of vehicle often indicated that the vehicle had been broken into and stolen.

That same night, several thefts of this type of vehicle were announced over the radio. The officers observed no other suspicious circumstances. Because of unusually heavy radio traffic, the officers were unable to obtain further information on the vehicle. The officers decided to stop the vehicle to check the registration. Tyler noted that the City of Richmond decal had been torn off and replaced; the year indicator on the decal was upside down. Logan produced a driver's license for identification, but did not have a registration for the vehicle. A DMV check revealed an outstanding warrant for Logan's arrest.

Pursuant to his arrest, the officers searched Logan and recovered five bags of cocaine, a pager, and over one thousand dollars in cash. When Tyler asked if Logan had a weapon in the car, he replied, "Is this a dangerous area?" Tyler then searched the vehicle and found an automatic weapon in an infant carrier seat on the backseat of the vehicle. Logan later stated that the gun belonged to his girlfriend.

In a suppression hearing immediately prior to trial, Logan presented evidence that his vehicle had been broken into prior to the night he was arrested. Logan testified that the thieves had gained access to the vehicle by breaking the vent window. Logan further testified that he later had the window repaired with plexiglass and that his girlfriend had commented that it looked like there was no window there. The court denied Logan's motion to suppress the cocaine and the gun.

At the beginning of Logan's trial, immediately following the suppression hearing, Logan's defense counsel moved to adopt the evidence introduced during the suppression hearing. The evidence was accepted by the court without objection by the Commonwealth.

## II.

## REASONABLE SUSPICION TO INITIATE
## TRAFFIC STOP

▇▇ We begin our analysis by recognizing that "[w]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief." *Zimmerman v. Commonwealth*, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988). In order to justify an investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity. *Murphy v. Commonwealth*, 9 Va. App. 139, 143-44, 384 S.E.2d 125, 127 (1989). Although the Commonwealth has the burden of proving that such an investigatory stop is lawful, *id.* at 143, 384 S.E.2d at 127, the "level of suspicion required [for an investigative stop] is less demanding than the standard of probable cause," *Quigley v. Commonwealth*, 14 Va. App. 28, 33, 414 S.E.2d 851, 854 (1992).

▇▇ "In determining whether an 'articulable and reasonable suspicion' justifying an investigatory stop of a vehicle exists, courts must consider 'the totality of the circumstances — the whole picture.' " *Murphy*, 9 Va. App. at 144, 384 S.E.2d at 128 (citing *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989)). *See also Zimmerman*, 234 Va. 608, 612, 363 S.E.2d 708, 709. As we stated in *Castaneda v. Commonwealth*, 7 Va. App. 574, 376 S.E.2d 82 (1989) (en banc): "Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." *Id.* at 580, 376 S.E.2d at 85.

▇▇ Courts must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that "trained law enforcement officers may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.' " *Id.* at 580, 376 S.E.2d at 85 (citation omitted).

Therefore, when a court reviews whether an officer had reasonable suspicion to make an investigatory stop, it must view the totality of the circumstances and view those facts objectively *through the eyes of a reasonable police officer with the*

*knowledge, training, and experience of the investigating officer.* Based upon that objective assessment courts must determine whether the officer could have entertained an articulable and reasonable suspicion that the defendant was involved in unlawful activity. If the officer's suspicion amounts to merely an "inchoate and unparticularized suspicion or hunch . . . [rather] than a fair inference in light of his experience, [it] is simply too slender a reed to support the seizure" under the fourth and fourteenth amendments.

*Murphy*, 9 Va. App. at 144, 384 S.E.2d at 128 (citations omitted) (emphasis added).

As the crime suspected by the officers was that of auto theft, the specific question posed is what circumstances would reasonably justify a trained veteran police officer's suspicion that the car driven by Logan had been stolen. The officers observed that the rear passenger side vent window of the car appeared to be missing. Officer Tyler knew that the type of car observed was extremely popular among car thieves. Officer Tyler's training and experience suggested to her that a broken vent window on this type of car indicated that it had been broken into and stolen. That same night, several thefts of this type of car were announced over the radio. Under these circumstances, we hold that Tyler had reasonable suspicion in light of her experience and fully justified her investigatory detention of Logan.

We disagree with the panel's decision that a "broken or missing [rear vent] car window is at least as easily suggestive of vandalism, accident or a prior theft of the vehicle or its contents." *Logan v. Commonwealth*, 18 Va. App. 136, 139, 442 S.E.2d 416, 418 (1994). While such objective physical evidence might seem innocent to the untrained observer, we cannot say that for the trained police officer it would not rise to the level of an articulable, particularized suspicion of criminal activity. We think it unlikely that vandals would break out only the rear passenger side vent window when intentionally damaging cars or that the same limited destruction might result from a traffic accident. Lastly, we agree with the Commonwealth that if a broken window is suggestive of a prior theft, it is just as suggestive of what the officers suspected it might be in this case, a theft in progress.

Our holding in this case is supported by decisions in similar cases from other states. See *Commonwealth v. Epps*, 415 Pa. Super. 231, 608 A.2d 1095, 1097 (1992) ("The broken rear vent window, as understood by those versed in the field of law enforcement, constituted sufficient grounds to give rise to reasonable suspicion"); *In re C.A.P*, 633 A.2d 787, 789 (D.C. App. 1993) ("We agree with the trial judge's conclusion that the smashed rear vent window, taken together with the officer's experience with other [unauthorized use of motor vehicle] arrests, was sufficient to support a reasonable suspicion in the officer's mind that the vehicle had been stolen"); *People v. Brown*, 627 N.E.2d 340, 345 (Ill. App. Ct. 1993) ("Even a report that the car was not listed as stolen does not obviate the possibility of a recent theft, and the broken window itself was sufficient to form the required reasonable, articulable suspicion. While it is true, as defendant argues, that there could be any number of innocent explanations for a broken window vent on a late-model car, it is also true that this is a frequent method of breaking into cars to steal them").

By finding that the officers had a reasonable, articulable suspicion for the seizure, we reach a result more in line with the principles espoused in *Murphy* and our previous holdings. *See Lowery v. Commonwealth*, 9 Va. App. 314, 388 S.E.2d 265 (1990) (holding that "[a] police officer's discovery in Virginia of a Florida rental vehicle owned by a local Florida rental agency, together with the officer's knowledge that such agencies generally prohibit their automobiles from being taken outside of the state, justifies a reasonable suspicion that the vehicle is stolen or may have been removed from Florida without proper authority").

## III.

### SUFFICIENCY OF THE EVIDENCE

Having found that the stop of Logan's vehicle was lawful, we now address the sufficiency of the evidence to prove that Logan constructively possessed the firearm found in his vehicle.

We examine the evidence in accordance with the standard set forth in *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975):

Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most

favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

■ Possession may be actual or constructive. *Clodfelter v. Commonwealth*, 218 Va. 619, 622, 238 S.E.2d 820, 822 (1977). Constructive possession may be established by "evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control." *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984).

■ In determining whether a defendant constructively possessed a firearm, the defendant's proximity to the firearm and his occupancy and ownership of the vehicle must also be considered.

Ownership or occupancy of a vehicle or of premises where illicit drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items in the vehicle or on the premises in order to prove that the owner or occupant constructively possessed the contraband. Furthermore, proof that a person is in close proximity to contraband is a relevant fact that, depending on the circumstances, may tend to show that, as an owner or occupant of property or of a vehicle, the person necessarily knows of the presence, nature and character of a substance that is found there.

*Burchette v. Commonwealth*, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992) (citation omitted). *See also Casteneda*, 7 Va. App. at 584, 376 S.E.2d at 87; *Lane v. Commonwealth*, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982).

In this case, the evidence was that Logan owned and/or controlled the vehicle in which he was stopped. Logan testified that he was both responsible for fixing the window of the vehicle after

it was broken into and installing the county sticker on the windshield. Logan never disputed that the vehicle was his when answering both the Commonwealth's and his own attorney's questions which referred to the vehicle as belonging to him.

The record shows that Logan was the vehicle's only occupant when it was stopped by the police. Officer Tyler testified that she found the firearm "behind the defendant in the baby seat." When asked whether any weapons were in the vehicle, Logan responded: "Is this a dangerous area?" When the officers found the gun, he explained that it belonged to his girlfriend. From this evidence, the trial court could have reasonably concluded that Logan was aware of both the presence and the character of the firearm and that it was subject to his dominion and control. The fact that the gun may have been his girlfriend's was of no consequence.

The relationship between the distribution of controlled substances, like the one found on Logan, and the possession and use of dangerous weapons is now well recognized. *Harmon v. Commonwealth*, 15 Va. App. 440, 446, 425 S.E.2d 77, 80 (1992); *Williams v. Commonwealth*, 4 Va. App. 53, 67, 354 S.E.2d 79, 86 (1987); *Michigan v. Summers*, 452 U.S. 692, 702 (1981). Accordingly, the evidence of Logan's possession of cocaine with the intent to distribute is another factor that the trial court could have and did specifically consider in concluding that Logan also constructively possessed the firearm found in his car. "It is within the province of the [fact finder] to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts." *Beck v. Commonwealth*, 2 Va. App. 170, 176, 342 S.E.2d 642, 645 (1986). *See also Inge v. Commonwealth*, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976). From the totality of the evidence we hold the trial court's conclusions reasonable and that the evidence supported the finding that Logan constructively possessed the firearm.

*Affirmed.*

Baker, J., Coleman, J., Willis, J., Bray, J., and Fitzpatrick, J., concurred.

Koontz, J., with whom Barrow, J., Benton, J., and Elder, J., join, dissenting in part and dissenting in judgment.

For the reasons more fully articulated in the panel decision, *Logan v. Commonwealth*, 18 Va. App. 136, 442 S.E.2d 416 (1994), I respectfully dissent from that part of the majority opinion which now upholds the legality of the initial seizure of Logan and his vehicle. In my view, the officers lacked a reasonable, articulable suspicion that Logan or his vehicle were, or recently had been, involved in some form of criminal activity. *Waugh v. Commonwealth*, 12 Va. App. 620, 621-22, 405 S.E.2d 429, 429 (1991). Accordingly, because the stop of Logan's vehicle was in violation of Logan's Fourth Amendment right to be free from unreasonable seizures and because all of the events thereafter flowed from that unlawful seizure, I would reverse and dismiss the charges against him.

The majority correctly states our standard of review to determine whether the requisite degree of suspicion existed to support the seizure in question. We must make an objective assessment of the totality of the circumstances, giving due credit to the knowledge, training, and experience that enables an officer to perceive and articulate meaning in particular conduct which would be wholly innocent to the untrained observer. Our task is to distinguish a mere hunch, regardless of its accuracy, from a reasonable, articulable suspicion of criminal activity. *See Murphy v. Commonwealth*, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989). The mere articulation of a suspicion by the police, however, does not make that suspicion reasonable for constitutional purposes.

Here, the officers knew only that a vehicle, popular with the general public and as well as with car thieves, appeared to have a broken vent window and that illicit entry into vehicles of that type was often accomplished by the breaking of a vent window. The majority holds that on those facts the police had a reasonable, articulable suspicion that Logan or his vehicle were, or recently had been, involved in some form of criminal activity. In my view, such a conclusion elevates the articulation of a suspicion above the requirement that the suspicion be *reasonable*. Our standard of review does not permit us to ignore what we know from common knowledge and human experience and to accept in a vacuum the conclusions articulated by the police in determining the reasonableness of the basis for the suspicion of criminal activity in a particular factual scenario.

It seems unrefutable to me that from common knowledge and human experience we know that vent windows on motor vehicles are broken by accident, by vandals, or in a prior theft of a vehicle or its contents. Thus, as here, the mere presence of a broken vent window without some additional suspicious circumstance does not establish a reasonable suspicion that a violation of the law has occurred or is occurring.

In short, I disagree with the majority's conclusion that the mere operation of a motor vehicle with a broken vent window provides the police with a *reasonable* suspicion that criminal activity is involved. Accordingly, I respectfully dissent.