COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Bumgardner
Argued at Salem, Virginia

UNPUBLISHED

LANTRON NIKIA WOMACK

                                          MEMORANDUM OPINION[*] BY
v.        Record No. 0076-12-3               JUDGE TERESA M. CHAFIN
                                             FEBRUARY 5, 2013
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
David A. Melesco, Judge

Glenn L. Berger (Berger & Thornhill, on brief), for appellant.

Steven A. Witmer, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


On November 10, 2011, Lantron Nikia Womack ("Womack") was convicted by the

Circuit Court of the City of Danville of possession of cocaine with intent to distribute, in

violation of Code § 18.2-248, possession of a firearm while in possession of cocaine, in violation

of Code § 18.2-308.4, and public intoxication, in violation of Code § 18.2-388. On appeal,

Womack contends that the evidence presented was insufficient to support his convictions of

possession of cocaine with intent to distribute and possession of a firearm while in possession of

cocaine.[1] We disagree, and affirm the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Womack argues that the evidence presented was insufficient to establish his
intent to distribute cocaine, he never challenged the sufficiency of the evidence establishing his
intent to distribute at trial. Therefore, Womack has waived this argument and it will not be
considered by this Court on appellate review. See Rule 5A:18.

Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence establishes that shortly after 2:00 a.m. on June 3, 2011, Danville Police Officer Kearns received a report of gunfire in the Ashe Street area of Danville. After he and another officer, Officer Garrett, found no suspicious activity on Ashe Street, Officer Kearns decided to check Lansdale Street, a nearby dead-end street. Officer Kearns was familiar with the neighborhood and knew that the end of Lansdale Street had been the site of prior cocaine and marijuana arrests.

As Officer Kearns drove down Lansdale Street, he observed two cars, a gold Impala and a white vehicle, parked on each side of the road facing the dead end. A male was standing in the middle of the street, while a second male was standing closer to the gold car. Two females were sitting in front of the gold car. Officer Kearns exited his police car and informed the group he was investigating reported gunfire in the area. He asked them if they had heard anything, and they responded negatively.

Officer Kearns looked around the area for bullet casings. When he looked through the window of the gold car, he saw a gun on the driver's seat. Officer Kearns asked the four individuals if they knew who owned the gold car, and they answered, "No." He also asked them if they knew who owned the gun, and they stated they did not. Officer Kearns examined the gun again with his flashlight and recorded its serial number. He called in the number to dispatch for identification, and continued to speak with the group.

Officer Garrett and Officer Kearns patted down the group for weapons and directed them to sit down in the road next to the white vehicle. Womack was not compliant. Rather than

sitting down in the road, he merely "squatted" and was "very fidgety." He avoided eye contact with the officers, and when Officer Kearns looked away, Womack stood up and began walking away. In response, Officer Kearns advised Womack that he was being detained, and placed him in handcuffs.

Officer Kearns waited approximately five to ten minutes before dispatch notified him that the gun was stolen. Either shortly before or after receiving this information, Officer Kearns asked Womack what he knew about the gun. Womack responded that he had no knowledge of it. Womack also answered negatively when asked if he had the keys to the gold car or if he had driven it. He also denied that the car was registered to him. When Officer Kearns asked Womack how he had arrived at the scene, Womack "did not give a specific answer."

Upon questioning Womack, Officer Kearns noticed a strong odor of alcohol about him. Officer Kearns also noticed that Womack's eyes were "glassy" and "bloodshot" and that his speech was slurred. Officer Kearns arrested Womack for public intoxication, and searched his person incident to arrest. Officer Kearns found a set of car keys to a Chevrolet vehicle, $292 in cash, and a Sprint cell phone in Womack's pockets. The car keys were attached to an Enterprise Car Rental key fob that remotely unlocked the gold car, started its engine, and released its trunk.

When Officer Kearns opened the door to the gold car, he immediately smelled a strong odor of marijuana. He retrieved the gun from the driver's seat, and two loaded magazines from a pocket in the driver's-side door. A cell phone charging cord found inside the vehicle bore the same brand as the cell phone recovered from Womack, and fit that cell phone. On the back seat, Officer Kearns found a pair of jeans consistent with the style of jeans that Womack was wearing that evening. Both pairs of jeans bore an "extravagant, colorful threading pattern in the rear buttocks area" and had rolled cuffs.

Inside the gold car's closed center console, Officer Kearns found a Crown Royal bag containing digital scales and ten loose plastic baggies. He also discovered a plastic bag containing an off-white rock-like substance and a plastic bag containing a white powder. Forensic tests later revealed the off-white "rocky" substance was 92.17 grams of cocaine, while the powder was 25.49 grams of cocaine powder.

When Officer Kearns transported Womack from the scene in his cruiser, he noticed that Womack was "moving a lot" in the back seat and complaining that his handcuffs were "too tight." When Womack exited the vehicle at the jail, his jeans were partially pulled down. Officer Kearns observed a white powder on Womack's jeans at this time that was not present during his initial search of Womack. Officer Kearns found a torn plastic baggie with white residue in the cruiser's back seat. The broken baggie was analyzed and found to contain 0.10 gram of cocaine powder.

At Womack's trial, Eric Wimbush ("Wimbush"), the other male at the scene, testified that he had arranged to meet Womack on Lansdale Street that evening. Wimbush testified that he drove the white car parked in the street. Wimbush stated that Womack and the two females were standing in the street when he arrived.

The Commonwealth offered Officer Shively as an expert witness in drug distribution. Officer Shively stated that scales, plastic baggies, cash, and guns are items consistent with the distribution of narcotics. He also stated that certain terms used in text messages on the cell phone found in Womack's pocket were common terms used in the drug trade.

<u>Analysis</u>

Womack argues that the evidence presented failed to prove that he possessed the cocaine and firearm recovered from the gold car.

> Possession may be actual or constructive. Constructive possession
> may be established by evidence of acts, statements, or conduct of

the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control.

Logan v. Commonwealth, 19 Va. App. 437, 444, 452 S.E.2d 364, 368-69 (1994) (en banc) (citation omitted) (internal quotation marks omitted).

> Ownership or occupancy of a vehicle or of premises where illicit drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items in the vehicle or on the premises in order to prove that the owner or occupant constructively possessed the contraband . . . . Furthermore, proof that a person is in close proximity to contraband is a relevant fact that, depending on the circumstances, may tend to show that, as an owner or occupant of property or of a vehicle, the person necessarily knows of the presence, nature and character of a substance that is found there.

Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992) (citation omitted).

Although "ownership or occupancy alone is insufficient to prove knowing possession of drugs located on the premises or in a vehicle," id., circumstantial evidence coupled with ownership or occupancy often establishes the constructive possession of such contraband. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing." Stamper v. Commonwealth, 220 Va. 260, 272, 257 S.E.2d 808, 817 (1979) (citation omitted). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Id. at 273, 257 S.E.2d at 818 (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 526, 564 (1919)).

In the present case, the combined weight of the circumstantial evidence before the trial court supports its finding that Womack possessed the cocaine and the firearm. When the police officers encountered Womack, he was standing in the middle of the street after midnight in an area where gunfire had been reported. When asked how he had arrived at the scene, Womack

gave an evasive response. He also explicitly denied having keys to the gold car. Despite these statements, the officers later recovered the keys to the gold car from Womack's pocket. "A false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). Not only did Womack give Officer Kearns both evasive and false responses to his questions, he ignored Officer Kearns's instructions to sit down and attempted to walk away from the scene. The trial court was entitled to conclude that Womack lied to the officers to conceal his guilt and that he was attempting to leave the scene because he was aware that the gold car contained contraband.

Additionally, the evidence established that Wimbush had driven the white car, leaving a rational fact finder to conclude that Womack had arrived at the scene in the gold car. The presence of a cell phone charging cord matching the cell phone found in Womack's pocket and clothing similar to that worn by Womack in the gold car provided additional circumstantial evidence that Womack had recently occupied the car.

Further, Womack's possession of car keys to the gold car was "significant evidence from which, when considered with other evidence, it can be inferred that the [contraband] was subject to his dominion and control." See Jetter v. Commonwealth, 17 Va. App. 745, 747, 440 S.E.2d 633, 634 (1994). The large amount of cash in Womack's pocket, the presence of terms commonly used in the drug trade in text messages on the cell phone found in Womack's pocket, and the baggie of cocaine powder later found in the police cruiser where Womack had been seated provided additional circumstantial evidence linking Womack to the cocaine in the gold car's console. Viewed as a whole, this evidence was sufficient for a rational fact finder to conclude that Womack was aware of the presence and nature of the cocaine in the console and that the cocaine was subject to his dominion and control.

Likewise, the evidence proved beyond a reasonable doubt that Womack possessed the gun in plain view on the driver's seat.

> Many courts have acknowledged the commonsense "relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons." Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (*en banc*); Christian v. Commonwealth, 33 Va. App. 704, 714 n.5, 536 S.E.2d 477, 482 n.5 (2000) (*en banc*). Guns are the "tools of the trade" in the underground drug world. United States v. White, 875 F.2d 427, 433 (4th Cir. 1989). While not alone dispositive, evidence linking a defendant to drug distribution may be considered as one factor in determining whether he may have had a motive to possess a firearm.

Thomas v. Commonwealth, 44 Va. App. 741, 755, 607 S.E.2d 738, 744-45, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005) (citation omitted).

While circumstantial, the evidence was sufficient for the trial court to conclude that Womack possessed the gun on the driver's seat of the gold car. The evidence previously discussed linked Womack to both the gold car and the cocaine in the console of the car. The gun, in plain view on the driver's seat, was immediately next to the console where the cocaine was stored. Upon concluding that Womack had recently occupied the gold car and possessed the cocaine, the trial court was entitled to find that he possessed the firearm. The fact that the gun was in plain view next to the console containing the cocaine established that Womack was aware of the presence and character of the gun, and his recent occupation of the car and possession of the cocaine established that the gun was subject to his dominion and control.[2]

Affirmed.

---

[2] Possible access to the gold car by the two females at the scene does not affect our conclusion. See Ritter v. Commonwealth, 210 Va. 732, 741, 173 S.E.2d 799, 806 (1970) ("[P]ossession need not always be exclusive. The defendant may share it with one or more."); Smallwood v. Commonwealth, 278 Va. 625, 632, 688 S.E.2d 154, 157 (2009) ("contraband was 'open and obvious to someone looking in the vehicle, and . . . in immediate proximity to where [the defendant] had been sitting'" (quoting Bolden v. Commonwealth, 275 Va. 144, 149, 654 S.E.2d 584, 586 (2008))).