COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, Callins and Senior Judge Petty
Argued at Lexington, Virginia

**PUBLISHED**

DAVID BRANDON CANNADAY

v.      Record No. 0810-21-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE DOMINIQUE A. CALLINS
NOVEMBER 9, 2022

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Fred D. Smith, Jr. (Fred D. Smith, Jr., P.C., on briefs), for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

David Brandon Cannaday appeals his sentence imposed for possession of over 100 grams of

methamphetamine with intent to distribute under Code § 18.2-248(H)(5).  On that conviction, the

trial court sentenced Cannaday to forty years, of which he was to serve the mandatory minimum

incarceration period of twenty years as required by Code § 18.2-248(H)(5) for a conviction under

that statute.  On appeal, Cannaday contends that the trial court erred in failing to apply the "safety

valve" provision of Code § 18.2-248(H)(5).  Because we hold that the trial court properly

considered the safety valve provision, we affirm the trial court's judgment.

BACKGROUND[1]

I. The Underlying Offense

Cannaday's interactions with the Henry County Sheriff's Office began in February 2018. Three times that month, February 4, 8, and 20, an informant came to Cannaday's home and purchased drugs from Cannaday.[2] Based on information provided by the informant, the sheriff's office obtained a search warrant for Cannaday's home and executed the warrant on February 28, 2018.

In the second-floor master bedroom of the home, sheriff's deputies found $1,837 in cash, .55 gram of heroin, a Schedule I controlled substance, 10.76 grams of "a substance containing methamphetamine," a Schedule II controlled substance, a loaded Taurus PT-740 semi-automatic pistol, a Thompson Center 50 caliber muzzle-loader rifle, and a loaded semi-automatic Soc It Flli Galesi-Brescia 6.35 caliber pistol. The Taurus PT-740 was found under the mattress, while the muzzle-loader was hanging over a window. The Soc It Flli Galesi-Brescia was found in a nightstand.

In the kitchen, the deputies found $1,000 in cash, a spoon, scissors, a shoelace, a bag containing digital scales, and a ledger on the countertop. On the top shelf of a utility closet in the kitchen, the deputies found a plastic bag containing 114.88 grams of "a substance containing methamphetamine." Along with the firearms, drugs, and other items found in the home, deputies also seized $1,600 in cash from the "nail room," three cell phones, and a set of black body armor

---

[1] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [Cannaday]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion. The rest remains sealed." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022).

[2] The informant conducted another buy on February 15, but the substance he bought from Cannaday was not illegal.

from the living room. Finally, the deputies seized several vehicles, including a 2009 Nissan Maxima. The deputies discovered a Ruger semi-automatic pistol in the console of the Nissan Maxima.

Following the execution of the search warrant, Cannaday spoke with the Henry County investigators, including Investigator Timothy Brummit. Cannaday admitted ownership of all the controlled substances found in his home. He cooperated with the sheriff's office, providing the investigators with information about his buyers and suppliers, and offering detail about an upcoming controlled substance purchase. He also asserted that all the firearms discovered in the search of his home belonged to his wife.

## II. The Charges and Pleas

On January 4, 2021, the trial court convicted Cannaday of three counts of distribution of various substances in violation of Code § 18.2-248(C) and one count of distribution of an imitation substance in violation of Code § 18.2-248(G), all of which stemmed from the controlled purchases that occurred in February 2018.[3] Then, on April 5, 2021, Cannaday pled no contest to, and was convicted of, one count of possession with intent to distribute more than 100 grams of methamphetamine in violation of Code § 18.2-248(H)(5), the amended charge of possession of a firearm while possessing a controlled substance in violation of Code § 18.2-308.4(A), and one count of possession of a firearm after previously being convicted of a felony within ten years, in violation of Code § 18.2-308.2(A). The April 2021 convictions stemmed from the search of Cannaday's home executed February 28, 2018.

---

[3] The precise nature of the four charges resulting from the February 4, 8, and 20, 2018 controlled purchases is not relevant to our analysis.

### III.  The Sentencing Affidavit

In anticipation of sentencing, Cannaday filed an "Affidavit in Support of Request for Safety Valve Exemption Pursuant to § 18.2-248(H)[(5)]."  The affidavit asserted that Cannaday purchased the Soc It Flli Galesi-Brescia 6.35 caliber pistol a few days before the search from a friend who was "trying to make some money."  Cannaday claimed that he "had no idea" that his wife kept a firearm hidden underneath the mattress in their master bedroom, although he was aware of the Ruger she kept in her Nissan Maxima.  The muzzle-loader, Cannaday affirmed, was a gift from his grandfather and inoperable.  Cannaday admitted to lying to the investigators about the ownership of some of the firearms.  He explained that he told investigators that the firearms found in the home belonged to his wife because "[he] knew [he] was a felon and couldn't own firearms."  The affidavit also included a detailed description of Cannaday's business in narcotics distribution.

Cannaday also submitted an affidavit executed by his wife, Kasie Taylor Cannaday.  In her affidavit, Kasie acknowledged that the Taurus PT-740 semi-automatic pistol discovered under the mattress belonged to her.  Kasie explained that Cannaday "didn't know about it" because she purchased the pistol during a period of marital separation.  When she and Cannaday reconciled, she did not tell him about the pistol because she "knew he couldn't be around guns" because of a prior felony conviction.  Kasie acknowledged she also owned the Ruger found in her Nissan Maxima and asserted that she "always kept it with [her] in the car for protection."

### IV.  The Sentencing Hearing

The trial court then held a sentencing hearing.  Before the hearing, Cannaday filed a "Motion and Memorandum of Law in Support of Safety Valve Relief From Mandatory Minimum Sentence."  The motion addressed all five of the predicates enumerated in Code § 18.2-248(H)(5) and argued, essentially, that Cannaday met the requirements of the safety valve

provision because the firearms seized at his residence were not used in connection with the drug distribution offense with which he was being charged.

Before taking evidence, the trial judge announced to both counsel that "the [c]ourt has reviewed . . . the Defendant's Affidavit in Support of his request for the safety valve exemption and his motion and Memorandum of Law in support of that motion." The trial court then heard evidence from the Commonwealth and from Cannaday.

Cannaday called Kasie and Gary Wayne Wagoner, his father-in-law, as witnesses. Cannaday also testified on his own behalf. He testified that he had not been truthful in his statement to investigators that he was "this big guy" in the local drug community. Other than this admission about his candor with investigators, neither Cannaday nor his witnesses testified to the safety valve predicates addressed in his motion.

The Commonwealth called Investigator Brummit as her sole witness. Investigator Brummit testified that several months following the initial search, the sheriff's office learned that Cannaday had resumed selling controlled substances from his home. This information ultimately led to the execution of another search warrant on Cannaday's home on July 3, 2019. Although no drugs were found in the second search, sheriff's deputies seized two ATVs, three motorcycles, a scooter, a boat, a camper, four more vehicles, and $3,300 in cash.

At the conclusion of the evidence, the trial court heard argument from both the Commonwealth and Cannaday. The Commonwealth argued that Cannaday did not satisfy the safety valve provision because in his affidavit in support of his request "[Cannaday] said he had the firearm, he bought the firearm, [and] it was his firearm in the drawer of the bedroom where he was located." Cannaday's counsel, acknowledging that the trial court had "responded" to its motion for safety valve relief, argued that Cannaday had "taken the necessary steps to invoke the safety valve provision of [Code § 18.2-248(H)(5)] . . . to show that [Cannaday] at no point

- 5 -

during this transaction possessed a firearm, used a firearm, us[ed] threats of violence or any credible threats of violence, [which] is required for one of the factual predicates." Cannaday concluded by asking the trial court "to find that he has satisfied all of the factual predicates for safety valve relief and sentence him to an appropriate sentence."

After hearing the evidence and the arguments, the trial judge stated,

> As far as mandatory minimums . . . . You know, the question is: does Mr. Cannaday comport with the safety valve provisions of the statute, and the main question is the gun, although I think to a certain extent, Mr. Cannaday was playing both ends against the middle. . . . I am afraid I have to come to the conclusion that the safety valve provisions do not apply to Mr. Cannaday in this particular instance.

The trial court then sentenced Cannaday to forty years in prison on the charge of possession of methamphetamine with intent to distribute and five years on the charge of possession of a firearm after being convicted of a felony. Of his forty-year sentence, twenty years were mandatory active time under Code § 18.2-248(H)(5), and two years were mandatory active time under Code § 18.2-308.2(A). The remainder of each sentence was suspended. The court also imposed five years' imprisonment, all suspended, for each of the remaining charges.[4] This appeal followed.

ANALYSIS

Cannaday contends that the trial court erred in imposing the mandatory minimum sentence under Code § 18.2-248(H)(5) because it did not first articulate its specific findings for each predicate included in the statute's safety valve provision. He argues that by stating that the safety valve provision "did not apply," the trial court disqualified Cannaday at the threshold

---

[4] On appeal, Cannaday assigns error only as it regards the mandatory minimum sentence he received under Code § 18.2-248(H)(5).

- 6 -

without properly considering whether his evidence satisfied the safety valve provision of Code § 18.2-248(H)(5).

We review the trial court's imposition of sentence for abuse of discretion. *Commonwealth v. Greer*, 63 Va. App. 561, 567 (2014). This "includes review to determine that the discretion was not guided by erroneous legal conclusions." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008). But if this Court must interpret a statute, our review is *de novo*. *Hall v. Commonwealth*, 296 Va. 577, 582 (2018). "[W]e owe no deference to the circuit court's interpretation of the statutory scheme." *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). In interpreting law our "primary objective . . . is to ascertain and give effect to legislative intent." *Lawlor v. Commonwealth*, 285 Va. 187, 236 (2013) (quoting *Conger v. Barrett*, 280 Va. 627, 630 (2010)).

## I. The "Safety Valve" Provision of Code § 18.2-248(H)(5)

Code § 18.2-248(H)(5) provides that any person who

> manufactures, sells, gives, distributes or possesses with the intent to manufacture, sell, give or distribute . . . 100 grams or more of methamphetamine . . . shall be guilty of a felony punishable by a fine of not more than $1 million and imprisonment for 20 years to life, 20 years of which shall be a mandatory minimum sentence.

That said,

> Such mandatory minimum sentence shall not be applicable if the court finds that (i) the person does not have a prior conviction for an offense listed in subsection C of § 17.1-805; (ii) the person did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense or induce another participant in the offense to do so; (iii) the offense did not result in death or serious bodily injury to any person; (iv) the person was not an organizer, leader, manager, or supervisor of others in the offense, and was not engaged in a continuing criminal enterprise as defined in subsection I of this section; and (v) not later than the time of the sentencing hearing, the person has truthfully provided to the Commonwealth all information and evidence the person has concerning the offense or

- 7 -

> offenses that were part of the same course of conduct or of a common scheme or plan[.]

*Id.* The five predicates listed in this subsection are often referred to as its "safety valve" provision. When a trial court finds that all five predicates are satisfied, a defendant is entitled to relief from the imposition of a mandatory minimum sentence.

No appellate court has previously interpreted subsection (H)(5). However, in *Stone v. Commonwealth*, 297 Va. 100 (2019), our Supreme Court was presented with the question of how to interpret an identical provision of Code § 18.2-248(C)(4). In *Stone*, the appellant, charged with "cocaine distribution offenses," sought relief under the safety valve provision of subsection (C)(4). *Id.* at 100. Considering the appellant's claim, the Supreme Court held that "'the burden of production and persuasion' in establishing the factual predicates that provide potential relief from the mandatory minimum sentence under Code § 18.2-248(C) 'falls on the defendant seeking to invoke [this] safety-valve provision.'" *Id.* at 101 (alteration in original) (quoting *Hall*, 296 Va. at 586). The *Stone* Court also adopted the federal courts' preponderance of the evidence proof standard in evaluating whether a defendant has satisfied the safety valve provision. *Id.* Because subsections (C) and (H) are identically drafted, the *Stone* standards are also applicable here. The same burdens of production and persuasion and the same standard of proof apply to the safety valve provision of Code § 18.2-248(H) as to subsection (C) of the statute.

The mandatory minimum sentence imposed by subsection (H)(5) is modified by a second mandate, the safety valve provision. According to subsection (H), if a defendant satisfies the conditions enumerated within the safety valve provision, a trial court may not impose a mandatory minimum of twenty years' imprisonment. That is, the safety valve provision of subsection (H)(5) constitutes a provisional mandate modifying the initial, presumed mandate of a minimum sentence. Thus, the clause "[s]uch mandatory minimum sentence *shall not* be applicable *if*," waives the statute's mandate of a minimum sentence conditioned on satisfaction

of specified predicates. *See Crawford v. Commonwealth*, 23 Va. App. 661, 666 (1996) (en banc) ("The principle is well settled that '[w]hen the word "shall" appears in a statute it is generally used in an imperative or mandatory sense.'" (quoting *Schmidt v. City of Richmond*, 206 Va. 211, 218 (1965))). However, the onus of production and persuasion sits with the defendant. When a defendant invokes the waiver by moving for relief under subsection (H)(5), a trial court must evaluate whether the defendant has satisfied the statute's predicates before imposing a sentence.

## II. The Trial Court's Consideration of the Safety Valve Relief Provision

Cannaday argues that "the safety valve statutes require findings of fact on the dispositive issues rather than threshold denials." He contends that "the trial court here did not weigh [his] evidence on the disputed safety valve criteria." The trial court did permit Cannaday a hearing on his claim for relief under Code § 18.2-248(H)(5) and, contrary to his contention, weighed the evidence on the disputed criteria.

Cannaday filed a motion noticing the trial court of his intent to seek relief under the provision, accompanied by affidavits from Cannaday and his wife, Kasie. At the sentencing hearing, the trial judge acknowledged receiving and reviewing the motion and its supporting affidavits. Cannaday presented witnesses, none of whom—including Cannaday himself— testified to the predicates specified in Code § 18.2-248(H)(5). The trial court heard this evidence. It also heard argument from both counsel. Yet Cannaday bore the burden of producing sufficient evidence to support satisfaction of the safety valve provision. *Stone*, 297 Va. at 101. That he did not prevail in satisfying the safety valve predicates of Code § 18.2-248(H)(5) does not equate to the trial court not having properly considered Cannaday's request for relief.

But, Cannaday argues, the trial court could not have considered his request because the trial judge did not state the court's findings as to each predicate. On its face, Code

§ 18.2-248(H)(5) does not require a trial court to state its findings explicitly to establish that it made findings in accordance with the statute. And "[a]bsent a statutory mandate . . . a trial court is not required to give findings of fact and conclusions of law." *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982). No appellate court of this Commonwealth has interpreted Code § 18.2-248(H)(5) to implicitly require the same, and we find no reason to do so now. Even so, under Code § 18.2-248(H)(5), relief from the mandatory minimum sentence turns on a trial court finding a defendant to have satisfied statutorily mandated factual predicates. It follows that, where a trial court denies relief under the statute, it should, as the trial court did here, articulate the basis of its ruling sufficiently to enable review by this Court.

Cannaday challenges the trial court's use of the phrase "do not apply," arguing that this language proves the trial court failed to consider the statute's predicates and thus, disqualified him "at the threshold" from relief under the safety valve provision. In support, Cannaday points to the Second Circuit case of *United States v. Schreiber*, 191 F.3d 103 (2d Cir. 1999). In *Schreiber*, the Second Circuit found that the district court explicitly declined to apply the predicates listed in 18 U.S.C. § 3553(f) based on an erroneous interpretation of the statute.[5] That is, the Second Circuit held that "[b]ecause it disqualified appellant at the threshold, the district court never considered the factual question [presented by the statute's predicates]." *Id.* at 109. Although that case is not binding on this Court, Cannaday's reliance on *Schreiber* is nonetheless misplaced. Despite the similar underlying facts, this case is substantively distinct from *Schreiber*.

---

[5] Specifically, the district court erroneously held, "Defendants must provide truthful information *from the moment they meet with the prosecutors*" in contravention of the statutory deadline of "not later than the time of the sentencing hearing" provided in 18 U.S.C. § 3553(f)(5). *Schreiber*, 191 F.3d at 106 (emphasis added).

Here, by contrast, the trial court evaluated all of the relevant evidence towards the predicates included in Code § 18.2-248(H)(5) and did not disqualify Cannaday at the threshold. At the sentencing hearing, both sides acknowledged that of the predicates to be evaluated by the trial court, the relevant inquiry concerned predicate (ii): whether Cannaday possessed a firearm or other dangerous weapon *in connection with* his distribution offense. In his affidavit, Cannaday gave a detailed description of his involvement in drug distribution, including just before the execution of the first search warrant. He disclosed that his purchase of the Soc It Flli Galesi-Brescia 6.35 discovered in a nightstand next to his bed took place a few days before that search. Cannaday's affidavit also acknowledged that he had initially lied to investigators about his possession of firearms, stating, "I knew I was a felon and couldn't own firearms." In her affidavit, Kasie admitted that the Taurus PT-740 semi-automatic pistol was under Cannaday's mattress. The trial court had convicted Cannaday of several counts of drug possession connected with the execution of the first search warrant, during which search investigators also discovered the firearms. The court then addressed the matter squarely: "The question is: does Mr. Cannaday comport with the safety valve provisions of the statute, *and the main question is the gun*." After reviewing motions and hearing testimonial evidence and argument, the trial court found the answer to that question did not favor applying the provision. We disagree that the trial court's statement that Code § 18.2-248(H)(5) "did not apply" establishes that the trial court did not weigh Cannaday's evidence, and in doing so decline to adopt a conclusion so beholden to the formal features of a trial court's ruling as to render the substance of the actual proceedings a nullity. Thus, the remaining question is whether the trial court erred in finding that Cannaday failed to satisfy predicate (ii) of the safety valve provision.

III. Application of the Safety Valve Provision of Code § 18.2-248(H)(5)

In assessing the trial court's application of the safety valve provision of Code § 18.2-248(H)(5), we defer to the lower court's factual findings and view the facts in the light most favorable to the Commonwealth, the prevailing party below. *Kim v. Commonwealth*, 293 Va. 304, 311 (2017). Further, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Gerald v. Commonwealth*, 295 Va. 469, 479 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). At issue is predicate (ii), which concerns whether Cannaday "possess[ed] a firearm or other dangerous weapon *in connection with the offense*" of possession with intent to distribute, in violation of Code § 18.2-248(H).[6] Code § 18.2-248(H)(5)(ii) (emphasis added).

Our Supreme Court considered the "in connection with the offense" element in *Stone*. There, a confidential informant conducted four controlled drug buys at the appellant's home. *Stone*, 297 Va. at 102. Execution of a search warrant at the home led to the discovery of drugs and an AK-47 assault rifle in the appellant's bedroom. *Id.* The Commonwealth proffered an affidavit executed by the appellant's wife which stated that two months before the execution of the search warrant, the appellant "obtained the firearm . . . in the house for protection." *Id.* The affidavit was admitted, without objection from the appellant, as a factual stipulation. *Id.* The Supreme Court found that the appellant "failed to carry his burden of establishing that he did not possess the firearm in connection with" his drug distribution offenses. *Id.* at 103. The Court found the trial court entitled to draw an affirmative inference of connection based on the

---

[6] At oral argument, both counsel agreed that Code § 18.2-248(H)(5)(ii) was at issue in the lower court. At oral argument, the Commonwealth also contended that predicate (v) (regarding truthful disclosure to the Commonwealth by the time of the sentence hearing) was at issue below. But the record reflects that subdivision (ii) was the only predicate addressed by trial counsel and decided on by the trial court.

stipulated evidence of the presence of the firearm in the appellant's home while he conducted an illegal drug operation out of his home. *Id.* (holding that "the circuit court did not err by imposing the three-year mandatory minimum sentence . . . after rejecting [the appellant's] request for application of the safety valve provision").

According to the parties' stipulations, all the controlled buys conducted at Cannaday's home took place within days of each other in February 2018. Before the end of that month, the sheriff's office executed the search warrant which led to the discovery of four firearms within his residence. Three of the firearms were found in Cannaday's bedroom where he also maintained over eleven grams of illegal drug product. Two of those three firearms—the pistols—were within arm's reach of his bed. And although the muzzle-loader was inoperable, it hung over a window in plain view upon entry into the bedroom. *See United States v. Rhind*, 289 F.3d 690, 694-96 (11th Cir. 2002) (finding that the "fact that the guns were not loaded or inoperable is not dispositive" of the "in connection with" requirement of U.S.S.G. § 2K2.1(b)(5)). Although the affidavits claim that the firearm under the mattress belonged to Kasie, Cannaday also admitted in his supporting affidavit that he told investigators that the firearms found in the home belonged to his wife because "[he] knew [he] was a felon and couldn't own firearms." *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (holding that a factfinder may disbelieve self-serving testimony of the accused). As in *Stone*, the trial court here was entitled to draw from these facts an affirmative inference that Cannaday's possession of the firearms was connected to his illegal drug operation.

Cannaday presses to distinguish his case from *Stone*. Among other factors, Cannaday claims that he purchased the firearms after the distribution offenses; in contrast, Stone's firearms were purchased before his distribution offenses. This distinction is of no consequence. What is of consequence is that, as the record establishes, the relevant firearms were present and

- 13 -

accessible to Cannaday in his home at the time of the first search, when he was found to also be in possession of sufficient quantities of controlled substances as to suggest a distribution operation. *See Stone*, 297 Va. at 103 (recognizing that "it was reasonable [for the trial court] to draw the affirmative inference from the stipulated evidence that Stone in fact possessed the firearm for the protection of his illegal drug operation being conducted out of his residence"). Cannaday also emphasizes that, while the appellant in *Stone* pleaded guilty to possessing cocaine with the intent to distribute, he entered a plea of no contest to the offenses of possession of a controlled substance while in possession of a firearm and possession of over 100 grams of methamphetamine with intent to distribute.

We find Cannaday's distinctions unpersuasive. Although not identical to a guilty plea, a plea of no contest operates as an admission of the truth of the charge and all facts supporting it, for the purpose of imposing judgment and sentencing in a case. *Smith v. Commonwealth*, 59 Va. App. 710, 723 (2012). When a defendant admits the essential element of the offenses of possession of a firearm while possessing a controlled substance and possession with intent to distribute a controlled substance, a trial court may infer a connection between the possession of the firearm and the drug distribution offense. *See Logan v. Commonwealth*, 19 Va. App. 437, 445 (1994) (en banc) (affirming the link "between the distribution of controlled substances . . . and the possession and use of dangerous weapons"). The gravamen of each offense, one concerning simultaneous possession of a firearm and controlled substance, the other possession of methamphetamine with intent to distribute, implicates a connection between possession of a firearm and the drug distribution offense. That is, Cannaday did not just plead no contest to possession of a controlled substance. He also pleaded no contest to possession *with intent to distribute* methamphetamine. If a defendant is in possession of both a controlled substance and a firearm, while also having the intent to distribute a controlled substance, there is an adequate

foundation for the inference that possession of the firearm is in connection with the drug-related offense. *See id.* Such an inference remains warranted when a defendant pleaded no contest, and thus, has impliedly confessed to each relevant offense for sentencing purposes. Here, it is the sum of the pleas that produces the result.

Cannaday's two pleas, the discovery of body armor, multiple firearms, and substantial amounts of illegal drug product in his home, and the stipulation that multiple drug sales out of his home had occurred are all facts from which a reasonable factfinder could conclude that Cannaday possessed firearms "in connection with" his illegal drug distribution. The trial court had the evidence before it, reviewed Cannaday's request for safety valve relief, and heard the arguments of counsel regarding the same. Although not comprehensive, the statements of the trial court that "the main question is the gun," "I think to a certain extent, Mr. Cannaday was playing both ends against the middle," and "I have come to the conclusion that the safety valve provisions do not apply" show the trial court considered the statutory requirements and the evidence presented, including Cannaday's and his wife's credibility. The trial court found that Cannaday failed to meet his burdens and therefore did not qualify for refuge under the safety valve provision of Code § 18.2-248(H)(5). We find the trial court did not err in so finding.

CONCLUSION

For all these reasons, we affirm the judgment of the trial court.

*Affirmed*.